### SHERLOCK ET AL. *v.* ALLING, ADMINISTRATOR.

1. Until Congress makes some regulation touching the liabilities of parties for marine torts resulting in death of the persons injured, the statute of Indiana giving a right of action to the personal representatives of the deceased, where his death is caused by the wrongful act or omission of another, applies, the tort being committed within the territorial limits of the State; and, as thus applied, it constitutes no encroachment upon the commercial power of Congress.

2. The action of Congress as to a regulation of commerce, or the liability for its infringement, is exclusive of State authority; but, until some action is taken by Congress, the legislation of a State, not directed against commerce or any of its regulations, but relating generally to the rights, duties, and liabilities of citizens, is of obligatory force within its territorial jurisdiction, although it may indirectly and remotely affect the operations of foreign or inter-State commerce, or persons engaged in such commerce.

3. The act of March 30, 1852, " to provide for the better security of the lives of

passengers on board of vessels propelled in whole or part by steam, and for other purposes," does not exempt the owners and master of a steam-vessel, and the vessel, from liability for injuries caused by the negligence of its pilot or engineer, but makes them liable for all damages sustained by a passenger or his baggage, from any neglect to comply with the provisions of the law, no matter where the fault may lie; and, in addition to this remedy, any person injured by the negligence of the pilot or engineer may have his action directly against those officers.

4. The relation between the owner or master and pilot, as that of master and employé, is not changed by the fact that the selection of the pilot is limited to those who have been found by examination to possess the requisite knowledge and skill, and have been licensed by the government inspectors.

ERROR to the Supreme Court of the State of Indiana.

Argued by *Mr. T. D. Lincoln* for the plaintiffs in error, and by *Mr. C. A. Korbly* for the defendants in error.

MR. JUSTICE FIELD delivered the opinion of the court.

In December, 1858, the defendants were the owners of a line of steamers employed in navigating the river Ohio between the port and city of Cincinnati, in the State of Ohio, and the port and city of Louisville, in the State of Kentucky, for the purpose of carrying passengers, freight, and the United States mail. On the 4th of that month, at night, two boats of the line, designated, respectively, as the " United States " and the " America," collided at a point on the river opposite the mainland of the State of Indiana. By the collision, the hull of one of them was broken in, and a fire started, which burned the boat to the water's edge, destroying it, and causing the death of one of its passengers, by the name of Sappington, a citizen of Indiana. The administrator of the deceased brought the present action for his death in one of the courts of common pleas of Indiana, under a statute of that State, which provides, " that when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission."

The complaint in the action alleged that the collision occurred within the territorial jurisdiction of Indiana, above the line of low-water mark of the river, and charged it generally to the careless and negligent navigation of the steamboat " United

States," by the defendants' servants, and officers of the vessel, but especially to the carelessness of the pilot, in running the same at too great a speed down the stream; in giving the first signal to the approaching boat as to the choice of sides of the river contrary to the established custom of pilots navigating the Ohio, and the rules prescribed by the act of Congress; and in not slackening the speed of the boat and giving a signal of alarm and danger until it was too late to avoid the collision.

To defeat this action, the defendants relied upon substantially the following grounds of defence : 1st, that the injuries complained of occurred on the river Ohio, beyond low-water mark on the Indiana side, and within the limits of the State of Kentucky; and that, by a law of that State, an action for the death of a party from the carelessness of another could only be brought within one year from such death, which period had elapsed when the present action was brought; and, 2d, that at the time of the alleged injuries the colliding boats were engaged in carrying on inter-State commerce under the laws of the United States, and the defendants, as their owners, were not liable for injuries occurring in their navigation through the carelessness of their officers, except as prescribed by those laws; and that these did not cover the liability asserted by the plaintiff under the statute of Indiana.

Under the first head, no question is presented for consideration of which we can take cognizance. It is admitted that the territorial limits of Indiana extend to low-water mark on the north side of the river, and the jury found that the collision took place above that mark. It is, therefore, of no moment to the defendants that the Supreme Court of Indiana held that the State possessed concurrent jurisdiction with Kentucky on the river, under the act of the Commonwealth of Virginia of 1789, providing for the erection of the district of Kentucky into an independent State, and that the legislation of Indiana could, for that reason, be equally enforced with respect to any matters occurring on the river, as with respect to similar matters occurring within her territorial limits on the land.

The questions for our consideration arise under the second head of the defence. Under this head it is contended that the statute of Indiana creates a new liability, and could not, there-

fore, be applied to cases where the injuries complained of were caused by marine torts, without interfering with the exclusive regulation of commerce vested in Congress. The position of, the defendants, as we understand it, is, that as by both the common and maritime law the right of action for personal torts dies with the person injured, the statute which allows actions for such torts, when resulting in the death of the person injured, to be brought by the personal representatives of the deceased, enlarges the liability of parties for such torts, and that such enlarged liability, if applied to cases of marine torts, would constitute a new burden upon commerce.

In supposed support of this position numerous decisions of this court are cited by counsel, to the effect that the States cannot by legislation place burdens upon commerce with foreign nations or among the several States. The decisions go to that extent, and their soundness is not questioned. But, upon an examination of the cases in which they were rendered, it will be found that the legislation adjudged invalid imposed a tax upon some instrument or subject of commerce, or exacted a license fee from parties engaged in commercial pursuits, or created an impediment to the free navigation of some public waters, or prescribed conditions in accordance with which commerce in particular articles or between particular places was required to be conducted. In all the cases the legislation condemned operated directly upon commerce, either by way of tax upon its business, license upon its pursuit in particular channels, or conditions for carrying it on. Thus, in *The Passenger Cases*, 7 How. 445, the laws of New York and Massachusetts exacted a tax from the captains of vessels bringing passengers from foreign ports for every passenger landed. In the *Wheeling Bridge Case*, 13 id. 518, the statute of Virginia authorized the erection of a bridge, which was held to obstruct the free navigation of the river Ohio. In the case of *Sinnot* v. *Davenport*, 22 id. 227, the statute of Alabama required the owner of a steamer navigating the waters of the State to file, before the boat left the port of Mobile, in the office of the probate judge of Mobile County, a statement in writing, setting forth the name of the vessel, and of the owner or owners, and his or their place of residence and interest in the vessel, and prescribed penalties for neg-

lecting the requirement. It thus imposed conditions for carrying on the coasting trade in the waters of the State in addition to those prescribed by Congress. And in all the other cases where legislation of a State has been held to be null for interfering with the commercial power of Congress, as in *Brown* v. *Maryland*, 12 Wheat. 425, *State Tonnage Tax Cases*, 12 Wall. 204, and *Welton* v. *Missouri*, 91 U. S. 275, the legislation created, in the way of tax, license, or condition, a direct burden upon commerce, or in some way directly interfered with its freedom. In the present case no such operation can be ascribed to the statute of Indiana. That statute imposes no tax, prescribes no duty, and in no respect interferes with any regulations for the navigation and use of vessels. It only declares a general principle respecting the liability of all persons within the jurisdiction of the State for torts resulting in the death of parties injured. And in the application of the principle it makes no difference where the injury complained of occurred in the State, whether on land or on water. General legislation of this kind, prescribing the liabilities or duties of citizens of a State, without distinction as to pursuit or calling, is not open to any valid objection because it may affect persons engaged in foreign or inter-State commerce. Objection might with equal propriety be urged against legislation prescribing the form in which contracts shall be authenticated, or property descend or be distributed on the death of its owner, because applicable to the contracts or estates of persons engaged in such commerce. In conferring upon Congress the regulation of commerce, it was never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.

It is true that the commercial power conferred by the Constitution is one without limitation. It authorizes legislation with respect to all the subjects of foreign and inter-State commerce, the persons engaged in it, and the instruments by which it is carried on. And legislation has largely dealt, so far as commerce by water is concerned, with the instruments of that

commerce. It has embraced the whole subject of navigation, prescribed what shall constitute American vessels, and by whom they shall be navigated; how they shall be registered or enrolled and licensed; to what tonnage, hospital, and other dues they shall be subjected; what rules they shall obey in passing each other; and what provision their owners shall make for the health, safety, and comfort of their crews. Since steam has been applied to the propulsion of vessels, legislation has embraced an infinite variety of further details, to guard against accident and consequent loss of life.

The power to prescribe these and similar regulations necessarily involves the right to declare the liability which shall follow their infraction. Whatever, therefore, Congress determines, either as to a regulation or the liability for its infringement, is exclusive of State authority. But with reference to a great variety of matters touching the rights and liabilities of persons engaged in commerce, either as owners or navigators of vessels, the laws of Congress are silent, and the laws of the State govern. The rules for the acquisition of property by persons engaged in navigation, and for its transfer and descent, are, with some exceptions, those prescribed by the State to which the vessels belong; and it may be said, generally, that the legislation of a State, not directed against commerce or any of its regulations, but relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or inter-State, or in any other pursuit. In our judgment, the statute of Indiana falls under this class. Until Congress, therefore, makes some regulation touching the liability of parties for marine torts resulting in the death of the persons injured, we are of opinion that the statute of Indiana applies, giving a right of action in such cases to the personal representatives of the deceased, and that, as thus applied, it constitutes no encroachment upon the commercial power of Congress. *United States* v. *Bevans,* 3 Wheat. 337.

In the case of *The Steamboat Company* v. *Chase,* reported in the 16th of Wallace, this court sustained an action for a marine

tort resulting in the death of the party injured, in the name of the administrator of the deceased, under a statute of Rhode Island, similar in its general features to the one of Indiana. There the deceased was killed whilst crossing Narraganset Bay in a sail-boat by collision with a steamer of the company; and though objections were taken, and elaborately argued, against the jurisdiction of the court, it was not even suggested that the right of action conferred by the statute, when applied to cases arising out of marine torts, in any way infringed upon the commercial power of Congress.

In addition to the objection urged to the statute of Indiana, the defendants also contended, that, as owners of the colliding vessels, they were exempt from liability to the deceased, as a passenger on one of them, and, of course, to his representatives, as the collision was caused, without any fault of theirs, by the negligence of the pilots; and they relied upon the thirtieth section of the act of Congress of March 30, 1852, to provide for the better security of the lives of passengers on board of vessels propelled in whole or part by steam. That act was in force when the injuries complained of in this case were committed, and its principal features have been retained in subsequent legislation. The section provided, " that whenever damage is sustained by any passenger or his baggage, from explosion, fire, collision, or other cause, the master and the owner of such vessel, or either of them, and the vessel, shall be liable to each and every person so injured to the full amount of damage, *if it happens through any neglect to comply with the provisions of law herein prescribed,* or through known defects or imperfections of the steaming apparatus or of the hull; and any person sustaining loss or injury through the carelessness, negligence, or wilful misconduct of an engineer or pilot, or their neglect or refusal to obey the provisions of law herein prescribed as to navigating such steamers, may sue such engineer or pilot, and recover damages for any such injury caused as aforesaid by any such engineer or pilot." 10 Stat. 72.

It was argued, that by this section Congress intended the exemption claimed. And confirmation of this view was found in the fact, that the owners were obliged to take a pilot, and were restricted in their choice to those licensed by the govern-

ment inspectors.   It was supposed that the relation between owner and pilot, as that of master and employé, was thus changed; and that, with the change, the responsibility of the former for the negligence of the latter ceased.   The court, however, proceeded through the trial upon a different theory of the position of the defendants.   It held, that, as owners, they were responsible for the conduct of all the officers and employés of the vessels, and that it was immaterial whether the vessels were or not at the time of the collision under the exclusive charge of the pilots.   The instructions to the jury, at least, went to that extent.   They, in substance, declared that, if the collision occurred within the territorial jurisdiction of Indiana, and was caused, without fault of the deceased, by the carelessness or misconduct of the defendants, or any of their agents, servants, or employés, in navigating and managing the steamers, or either of them, the plaintiff was entitled to recover.

In support of the exemption, the counsel of the defendants called to our attention an opinion of the Supreme Court of Kentucky, in a similar case arising upon the same collision, where such exemption was upheld.   The opinion is marked by the usual ability which characterizes the judgments of that court ; but, after much hesitation and doubt, we have been compelled to dissent from its conclusions.   The statute appears to us to declare, that the owners and master of a steam-vessel, and the vessel itself, shall be liable for all damages sustained by a passenger or his baggage, from any neglect to comply with the provisions of the law, no matter where the fault may lie ; and that, in addition to this remedy, any person injured by the negligence of the pilot or engineer may have his action directly against those officers.

The occasions upon which a pilot or engineer would be able to respond to any considerable amount would be exceptional.   The statute of England, which exempts the owners of vessels and the vessels from liability for faults of pilots, — pilotage there being compulsory, and pilots being licensed, — has not met with much commendation from the admiralty courts, and the general tendency of their adjudications has been to construe the exemption with great strictness.   This course of decision is

very fully stated in the exposition of the law made by Mr. Justice Swayne, in the case of *The China,* 7 Wall. 53, where this court declined to hold that compulsory pilotage relieved the vessel from liability.    In the case of *The Halley,* Law Rep. 2 Adm. & Ecc. 15, decided as recently as 1867, Sir Robert Phillimore strongly questioned the policy of the statute, and said that it appeared to him difficult to reconcile the claims of natural justice with the law which exempted the owner who had a licensed pilot on board from liability for the injuries done by the bad navigation of his vessel to the property of an innocent owner; and observed, that no one acquainted with the working of the law could be ignorant that it was fruitful in injustice.    The doctrine, that the owners are responsible for the acts of their agents and employés, ought not to be discarded; because the selection of a pilot by the owner is limited to those who, by the State, have been found by examination to possess the requisite knowledge of the difficulties of local navigation, and the requisite skill to conduct a vessel through them.    "As a general rule," says Mr. Justice Grier, "masters of vessels are not expected to be, and cannot be, acquainted with the rocks and shoals on every coast" (and, we may add, with the currents and shoals of every river), "nor able to conduct a vessel safely into every port.    Nor can the absent owners, or their agent the master, be supposed capable of judging of the capacity of persons offering to serve as pilots. They need a servant, but are not in a situation to test or judge of his qualifications, and have not, therefore, the information necessary to choice.    The pilot laws kindly interfere, and do that for the owners which they could not do for themselves." *Smith* v. *The Creole and The Sampson,* 2 Wall. Jr. 515.   And the learned Justice observes, that in such cases, where a pilot is required to be taken from those licensed, the relation of master and servant is not changed; that the pilot continues the servant of the owners, acting in their employ, and receiving wages for services rendered to them, and that the fact that he is selected for them by persons more capable of judging of his qualifications cannot alter the relation.

And, in the case of *The Halley,* Sir Robert Phillimore upon this subject says: "I do not quite understand why, because the

State insists, on the one hand, upon all persons who exercise the office of pilot, within certain districts, being duly educated for the purpose, and having a certificate of their fitness, and insists, on the other hand, that the master shall, within these districts, take one of these persons on board to superintend the steering of his vessel, the usual relation of owner and servant is to be entirely at an end; and still less do I see why the sufferer is to be deprived of all practical redress for injuries inflicted upon him by the ship which such a pilot navigates."

By the common law, the owners are responsible for the damages committed by their vessel, without any reference to the particular agent by whose negligence the injury was committed. By the maritime law, the vessel, as well as the owners, is liable to the party injured for damages caused by its torts. By that law, the vessel is deemed to be an offending thing, and may be prosecuted, without any reference to the adjustment of responsibility between the owners and employés, for the negligence which resulted in the injury. Any departure from this liability of the owners or of the vessel, except as the liability of the former may be released by a surrender of the vessel, has been found in practice to work great injustice. The statute ought to be very clear, before we should conclude that any such departure was intended by Congress. The section we have cited would not justify such a conclusion. Its language readily admits of the construction we have given, and that construction is in harmony with the purposes of the act.          *Judgment affirmed.*