JOHN L. SAULTER v. NEW YORK & WILMINGTON STEAMSHIP COMPANY.

*Master and Servant—Shipping—Pilotage—When owner of Vessel and pilot in charge liable for accident.*

1. The relation of master and servant exists between the owner of a vessel and a licensed pilot, temporarily taking the master's place in controlling the navigation of the vessel.

2. Where a steamer collided with the plaintiff's boat lying at a wharf, there being room for the steamer to leave its mooring without the danger of

collision; *Held*, that the owner of the steamer is liable to the plaintiff in damages for the injury sustained.

3. The pilot is individually liable only where he is in actual charge and solely at fault; and this must be affirmatively shown, together with the fact that there was no fault on the part of the officers and crew of the colliding vessel, to relieve its owner of the *prima facie* liability for the accident; and any concurring negligence with the fault of the pilot will not exempt the owner.

(*Gunter* v. *Wicker*, 85 N. C., 310, cited and approved).

CIVIL ACTION, tried at June Term, 1882, of NEW HANOVER Superior Court, before *Gilmer*, J.

The defendant appealed.

*Messrs. M. & J. D. Bellamy*, for plaintiff.
*Messrs. Thos. W. Strange* and *Haywood & Haywood*, for defendant.

SMITH, C. J. The plaintiff's flat was along side of and fastened to another flat lying at a wharf, distant from the defendant's steamer, variously estimated from twenty to sixty-six feet, where it had arrived at about 3 o'clock in the morning, and had a right to be. The steamer in charge of a pilot was also at her proper place, and was then preparing to start on her regular outward voyage to New York.

The movements on board the steamer were noticed by the plaintiff and his associates on the flat, and the danger of collision became the subject of discussion among them. An hour later the steamer began to back, in order to get out into the river, when within some ten or twelve feet of the flat, a man on the steamer, and supposed to be her captain, was hailed by one of the men on the flat, and was asked not to strike the flat. No answer was returned, and he seems not to have been heard by any one on board, and soon the steamer struck the flat and did the damage claimed in the action.

The plaintiff had time, after the steamer began to move, to place his flat beyond the danger of collision, and made no effort

to do so. The steamer pursued her usual course in detaching herself from the wharf, but she had sufficient room in the space between the two boats to turn round and get off, without colliding with the flat. Upon these facts given in evidence, two instructions were asked for the defendant.

1. The steamship then being under control of a licensed pilot, the defendant company, not having the management of their ship, was not responsible for the negligent conduct of her movements, but the pilot, personally, if any one.

2. The plaintiff (and others with him) having reason to apprehend the peril, and opportunity to remove the flat beyond its reach, after noticing what was going on, on board the steamer, and not doing so, was guilty of contributory negligence, and he could not recover.

The instructions were both refused, and instead the jury were charged that to acquit the defendant of liability upon the first ground, they must find that the injury was caused by the personal negligence of the pilot in managing the ship; and as to the second point, that the plaintiff's flat being lawfully at her place, he was not required to move her out of the way.

The instructions, as to the effect upon the defendant's liability of the steamer being then in charge of the pilot, was quite as favorable as the company could ask, and is in conformity with the adjudications in England in many of the shipping acts, of which there is contained an express provision exempting the owner or master from responsibility for damage or loss, occasioned by the neglect or want of skill in the pilot in charge. The result of these adjudications upon a full examination is declared by SWAYNE, J., speaking for the court, in *The China*, 7 Wall., 64, in these words:

1. "The exemption applied only when the pilot is actually in charge of the vessel, and solely in fault.

2. "If there is anything which concurred with the fault of the pilot in producing the accident, the exemption does not apply, and the vessel, master and owners are liable.

3. "The colliding vessel is in all cases, *prima facie* liable, and the party claiming the exemption must affirmatively show that the pilot was in fault," *and that "there was no fault on the part of the officers or crew, which might have been in any degree conducive to the damage."*

If the principle of non-responsibility for injury caused by a colliding vessel, under the management of a pilot, on the part of the vessel itself or of the owners, and, as Mr. Justice SWAYNE, in the case referred to, says, "the ship is not liable if the owner is not," and that the liability of each are "convertible terms," prevails in all its rigor here, as interpreted and applied in England, it is subject to the modification contained in the instruction, that the pilot must himself be *individually* in fault, and none others of the ship's officers and crew are, and this must be shown by one claiming the exemption.

The statute law regulating pilotage on the Cape Fear river and the adjacent waters outside, requires pilots to be on the look-out for an incoming vessel, and when such is met beyond the bar, and the pilot's tendered assistance in bringing her into port is refused, he is entitled to the same fees as if the services had been received and rendered. Bat. Rev., ch. 87, § 24. But this does not compel the master to take the pilot on board, for he may continue to navigate and manage his ship, trusting to his own skill and knowledge of the waters, but the compensation is awarded the pilot because he has performed a large share of his work in searching for and reaching the ship, and it would be a manifest wrong to allow him nothing for it. Indeed, the system could not be maintained, unless the hardy and adventurous seamen who live upon the waves and brave the storms of the ocean, and whose services are so vitally important to commerce, were requited for these labors and perils. Accordingly, such a provision, or else coercion in taking a pilot, is contained in the laws of the different states that lie on the seaboard.

But even when the statute imposes a penalty to enforce the employment of a pilot, rather than awarded remuneration for

services tendered and declined, the rule of responsibility attaching to the colliding vessel and her owner (for their liabilities are the same) is not changed, and there is no sufficient reason why it should be. Pilots are provided for the benefit of the owner of the ship, and the substitution of the pilot in place of the captain is for her greater safety in reaching port.

"The services of the pilot," in the forcible language of the court in the case referred to, "are as much for the benefit of the vessel and cargo, as those of the captain and crew. This compensation comes from the same source as theirs. Like them he serves the owner and is paid by the owner. If there be any default on his part, the owner has the same remedies against him as against other delinquents on board. The difference between his relations and those of the master is one of form rather than of substance."

In legal effect then the relation of master and servant exists between the owner and the pilot, temporarily taking the master's place in controlling the navigation of the vessel, and the principle *respondet superior* equally applies.

The same doctrine is affirmed in the recent case of *Sherlock* v. *Alling*, 93 U. S., 99, by Mr. Justice FIELD, who in the course of an elaborate discussion quotes with approval the language of Mr. Justice GREER in *The Creole and Sampson*, 2 Wall, Jr., 515, thus: "When a pilot is required to be taken from those licensed, the relation of master and servant is not changed. The pilot continues the servant of the owners, acting in their employ, and receiving wages for services rendered to them, and the fact that he is selected for them by persons more capable of judging of his qualifications, *cannot alter the relations*.

2. The objection that there was concurring negligence, on the plaintiff's part, finds no support in the facts. The flat was at a place where the plaintiff had a right to have it, and there was room for the steamer to turn round and leave her mooring without injuring the flat. It was in the night, and it does not appear

that any light shone upon the surrounding water to disclose the near proximity of the injured boat, which it would seem the steamer ought to have to avoid collisions at such an hour; and the only fault imputed to the plaintiff is, that, seeing the danger, he did not get out of the way to escape it. This, his own sense of danger should perhaps have prompted him to do, and perhaps his hope that the steamer would not touch his boat alone prevented his doing. But this cannot excuse the negligence of the managers of the steamer, who directly caused the damages. Their action was the direct and immediate cause, and to them essentially the blame attaches.

We have had occasion to consider the effect of concurrent negligence, as effecting the right of recovery, in *Gunter* v. *Wicker*, 85 N. C., 310, and are content to refer to it.

But here, there was no negligence of the plaintiff in mooring his flat by the side of another, where it could lawfully remain, and the defendant company seeks to excuse its own wrong because the plaintiff did not get out of the way, and avoid it. This cannot exempt the company from the consequence of the negligent conduct of its own agents. The judgment must be affirmed.

No error.                                    Affirmed.