### HOWARD v. ILLINOIS CENT. R. CO. et al.

(Circuit Court, W. D. Tennessee, W. D.    January 1, 1907)

#### No. 3,861.

1. COMMERCE—REGULATION OF INTERSTATE COMMERCE—POWERS OF CONGRESS—LIABILITY OF COMMON CARRIER TO ITS EMPLOYÉS.

   The liability of a common carrier to its employés for personal injuries is not commerce, and the regulation of such liability with respect to carriers engaged in interstate commerce is not within the power of Congress under the interstate commerce clause of the Constitution.

2. SAME—FEDERAL EMPLOYERS' LIABILITY ACT—CONSTITUTIONALITY.

   Act June 11, 1906, 34 Stat. 232, c. 3073, "relating to the liability of common carriers * * * engaged in commerce between the states * * * to their employés," as stated in its title, and which makes every such carrier liable to any employé or his personal representative for all damages which may result from the negligence of any of its officers, agents, or employés, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, ways, or works, is not a regulation of interstate commerce, but declares a new rule of liability for torts applicable to a single class of employers, and is void as not within the constitutional power of Congress to regulate such commerce.

3. SAME.

   Act June 11, 1906, 34 Stat. 232, c. 3073, which makes every common carrier engaged in interstate commerce liable to any employé or his personal representative for all damages which may result from the negligence of any of its officers, agents, or employés, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, ways, or works if it can be held a regulation of interstate commerce is still void for want of constitutional authority in Congress to enact it, inasmuch as it is so framed that its provisions are applicable alike to all commerce, including that between citizens of the same state, and cannot be confined to that which is subject to the control of Congress.

At Law.  On demurrer to declaration.

Bell, Terry, Anderson & Bell and William R. Harr, Special Assistant to Attorney General of United States, for plaintiff.

Burch & Biggs, for defendant.

McCALL, District Judge.  For certain wrongs and injuries inflicted by the defendant railroad companies upon a locomotive fireman, Will Howard, one of their employés, and from which he died, the plaintiff, as the administratrix of said Howard, sues the defendants for damages, under and by virtue of an act of Congress, approved June 11, 1906, and entitled "An act relating to liability of common carriers, * * * engaged in commerce between the states, * * * to their employés," and which is commonly known as the "Employers' Liability Act."  (Act June 11, 1906, 34 Stat. 232, c. 3073.)

To the declaration the defendants interpose a demurrer.  Without setting out here the demurrer verbatim, it is sufficient to state the grounds thereof, as summed up by the defendants' counsel in their brief, under four general heads, as follows:  (1) The act of Congress of June 11, 1906, is not a regulation of commerce, and is unconstitutional and void.  (2) The act is unconstitutional, in that it makes no distinction between interstate commerce and intrastate commerce, and, if a regulation of commerce at all, it regulates intrastate, as well as interstate, commerce.  (3) The act is unconstitutional, in that it violates the fifth amendment of the Constitution of the United States, which provides that "no person shall * * * be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation."  (4) The act is unconstitutional, in that it contravenes the seventh amendment to the Constitution of the United States, which provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."  We have here the constitutionality of the act of June 11, 1906, singly and sharply raised.

The questions as to whether or not this particular plaintiff is entitled to a verdict upon the facts in this case, or whether common carriers engaged in interstate trade or commerce should be made liable in this and similar cases, are of small consequence in comparison to the question raised by the demurrer.  Far above and beyond in its importance to all the people of the United States is the question, is Congress authorized to enact the law under consideration by virtue of the power delegated to it in article 1, § 8, cl. 3, of the Constitution of the United States, which provides "that Congress shall have power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes"?  Manifestly neither the merits nor the demerits of the act should be considered in determining its constitutionality.

It is unnecessary to cite authorities in support of the proposition that Congress has no powers except those expressly delegated to it, or necessarily and clearly implied from powers expressly granted.  Hence it follows that, if Congress is empowered to enact the legislation under

consideration, that power must be expressly conferred by the Constitution, or is clearly incident to some power which is expressly given. Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23. Unquestionably Congress has the power to regulate commerce between the several states, because that power is expressly granted by the Constitution. As is said in Veazie and Young v. Moor, 14 How. 568, 14 L. Ed. 515:

"The design and effect of that power, as evinced in the history of the Constitution, was to establish a perfect equality amongst the several states as to commercial rights, and to prevent unjust and invidious distinctions, which local jealousies, or local and partial interests, might be disposed to introduce and maintain."

To the same effect is Railroad Company v. Richmond, 19 Wall. 584, 22 L. Ed. 173.

What is this power? This question was asked by Chief Justice Marshall in the masterly opinion delivered by him in the case of Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23, and which opinion has been the chart for the bench and bar since that time in all cases of this character. The answer to the question is terse: "It is the power to regulate," he said, "that is, to prescribe the rule by which commerce is to be governed." In defining the extent of this power, the eminent Chief Justice says:

"This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than those prescribed by the Constitution."

The sovereignty of Congress over the objects delegated to it is plenary, and the power over commerce between the several states "is vested in Congress as absolutely as it would be in a single government, having in its constitution the same restrictions on the exercise of the power as are found in the Constitution of the United States." Gibbons v. Ogden, supra. Without citing the great array of cases which support the proposition, we may restate the well-settled rule that Congress has full, ample, and plenary power to regulate interstate commerce, and therefore to regulate the business of interstate commerce as carried on by common carriers.

What is meant by the power to regulate commerce? As has been seen, it is the power to prescribe rules by which commerce is to be governed. Gibbons v. Ogden, supra; Welton v. Missouri, 91 U. S. 279, 23 L. Ed. 347. But what is this commerce, for the regulation of which Congress has power to prescribe the rules, when carried on between the states? This brings us face to face with the bone of contention in the case. With that question answered correctly, the remainder of the way is comparatively smooth.

"Commerce is the exchange, or the buying and selling of commodities. Intercourse." Webster.

"Commerce undoubtedly is traffic; but it is something more. It is intercourse." Gibbons v. Ogden, supra.

"Transportation of freight and passengers is commerce." Wabash, St. L. & P. R. R. Co. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244.

Interstate commerce is the trading and trafficking in commodities between and amongst citizens of different states. It is transporting by common carriers passengers and property from one state into another

state. It is the selling and buying of a commodity, or commodities, by a citizen of one state to a citizen of another state, which commodity is to be transported from the state of the seller to the state of the buyer, or .to another state, and there resold, or used, as may serve the purpose of the buyer. The citizen may be an individual, firm, or corporation. Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Mobile County v. Kimball, 102 U. S. 691, 26 L. Ed. 238; Gloucester Ferry Company v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; Wabash, St. L. & P. R. R. Co. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4, 30 L. Ed. 244; Hopkins v. United States, 171 U. S. 597, 19 Sup. Ct. 40, 43 L. Ed. 290.

These .definitions do not solve the problem here. The interstate feature of it may be, and perhaps is, sufficiently clear. But manifestly the character of commerce legislated about, or on, by the act in question, is not of the varieties or kinds heretofore mentioned. The commerce mentioned and referred to in the act of June 11, 1906, is the liability of common carriers, engaged in interstate trade or commerce, to their employés. Congress, by the enactment of this law, assumed that this liability is commerce, or so related to or connected with it as to fall within the power of Congress as a proper subject for its legislation under article 1, § 8, cl. 3, of the Constitution of the United States.

The demurrant challenges the correctness of this position, and insists that the liability of the employer to the employé for injuries is not commerce at all, and that Congress exceeded its authority under the Constitution in enacting the law in question. No case of the federal Supreme Court, holding that such liability is commerce within the meaning of the commerce clause of the federal Constitution has been cited, and I know of none.

The Supreme Court of the United States has, in cases on writs of· error to the state courts, repeatedly upheld the decisions of the state Supreme Courts where the latter courts have sustained the validity of state statutes which altered the common-law rule in regard to common carriers and made them liable to their employés for injuries, much in the same fashion as is done by the act under consideration. Missouri Pacific Ry. Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Minneapolis & St. L. Ry. Co. v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; Tullis v. Lake Erie & Western R. R., 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192.

It does not follow, however, that, because the United States Supreme Court upheld the validity of these state statutes, that that is tantamount to deciding that a federal statute to the same purport and effect would be valid. What was decided in all or in many of these cases was that such state legislation did not undertake to regulate interstate commerce, and was not obnoxious to the Constitution or to any law of the United States for that reason. This would necessarily be so under the well-known rule that the Supreme Court will follow the decisions of the Supreme Court of a state in its construction of its own statutes and Constitution, unless such statute or Constitution is obnoxious to the Constitution or laws of the United States. It would not necessarily follow, therefore, because it has been held in several of the states that the liability of common carriers for injuries to their employés is

a proper subject for state governmental regulation, these state decisions not having been disturbed by the Supreme Court of the United States on review; that the liability of common carriers for injuries to their employés is a proper subject for federal governmental regulation, for the very simple reason that many things are subjects of state governmental control which are not subject to federal control. I am unable to bring my mind to the conclusion that the liability of a common carrier to its employés for injuries is interstate commerce, or commerce of any character, within the meaning of the commerce clause of the Constitution.

It is insisted that the relation between common carriers and their employés more or less affects interstate commerce, and that this legislation more or less affects interstate commerce, and for that reason it is within the power of Congress to regulate it. Chief Justice Fuller, speaking for the court in Williams v. Fears, 179 U. S. 278, 21 Sup. Ct. 131, 45 L. Ed. 186 says:

"If the power to regulate interstate commerce applied to all the incidents to which said commerce might give rise, and to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the states, and would exclude state control over many contracts purely domestic in their nature."

In the case of Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819, the court says:

"Legislation, in a great variety of ways, may affect commerce and persons engaged in it, without constituting a regulation of it, within the meaning of the Constitution."

See, also, State Tax Case, 15 Wall. 293, 21 L. Ed. 164, to the same effect.

Congress has power to regulate; that is, to prescribe rules by which commerce is to be governed. Under this construction of the interstate commerce clause of the Constitution the "Safety Appliance Act" was passed. That act has been acquiesced in, if not sustained, by the Supreme Court of the United States. Perhaps its validity has not been questioned. The fact that the safety appliance act imposes a liability upon common carriers, and the further fact that that act has passed muster before the Supreme Court of the United States, and by that court its provisions have been enforced, does not necessarily warrant the conclusion that the employers' liability act should be sustained.

Our attention is called to that act, and the insistence is made that the safety appliance act and the employers' liability act are the same in character; and, if it is within the power of Congress to enact the former, it must have the power to enact the latter. There is a vast difference between the two enactments. In the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), Congress lays down specific rules and regulations with which common carriers are required to comply. For a failure to observe such rules or perform such duties prescribed by Congress for the conduct and government of their business a penalty is provided, which may be recovered by the United States government, and in addition it provides:

"That any employé of any such common carrier who may be injured by any locomotive, car, or train in use contrary to the provisions of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier, after the unlawful use of such locomotive, car or train has been brought to his knowledge."

There the carrier is made liable to the employé, not simply because he is injured, but rather because the carrier violates and sets at naught the rules for the government of its business, prescribed by Congress, and because, as a result of such violation, the employé was injured. This liability, in its nature and essence, is a penalty. The power of Congress to prescribe a penalty for the infraction of a rule or regulation which it is empowered to enact by the express terms of the Constitution is clearly and necessarily implied; but, if it was not so implied, then authority for its enactment is found in clause 18, § 8, art. 1, of the Constitution.

In the act of June 11, 1906, Congress does not undertake to prescribe a rule or regulation for the conduct or government of the business of the common carrier, for the infraction of which a penalty or liability is imposed; but the act only declares that the carrier shall be liable for all damages to its employés, the result of the negligence of its officers, agents, employés, etc. In other words, the act abolishes the common-law rule as to fellow servants, as heretofore applied in the United States courts. There is no express grant of power to Congress over the subject of the liability of common carriers, or other employers, to their employés for torts; nor, in my opinion, is there any express grant from which such power can be necessarily or even reasonably implied. The power to prescribe rules for the government of interstate commerce necessarily carries with it the power and right to declare liability for their infraction. Otherwise, a statute prescribing a rule would be a dead letter. A government, with power to enact laws, but without power to enforce obedience to them, would be a howling farce in these strenuous, practical times. Had the act prescribed some rule, or rules, for the safer and more expeditious transaction of the business of common carriers, and which they were to observe, and fixed the liability, as it is in the act, for their failure to observe the rules and regulations, we would have a different act, and one very similar to the safety appliance act.

My conclusion on this branch of the case is that the power of Congress to define the liability of common carriers, engaged in interstate commerce, to their employés, and to create rights of action in favor of employés, and to define the method of procedure, can only be exercised when Congress in the first instance has prescribed rules of conduct governing common carriers, and it is only for the breach of these rules that Congress has the power to prescribe civil liability. Independent of such rules, Congress has no power to define the liability of a common carrier to its servants on account of torts committed by other servants of the common carrier. Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819.

The second ground of demurrer in substance is that, if the act regulates commerce at all, it regulates intrastate, as well as interstate, commerce. The act provides that every common carrier engaged in trade or commerce between the several states shall be liable to any of its

employés, etc. The character of commerce—that is, whether it is intra or inter state—is to be determined by the point of reception and the point of destination, and not by the number or length of railroads over which it is routed. All common carriers who haul or forward interstate commerce over any portion of its route are engaged in interstate commerce, if the several roads have existing a joint schedule of traffic rates for the purpose of handling through passengers and freight. Now, manifestly, the line of one of the carriers may lie wholly within a single state, yet it is engaged in interstate commerce if it maintains a joint traffic schedule of rates, and receives from an interstate road freight that comes from another state, and forwards it to its point of destination, or delivers it to a connecting line. And under this act of Congress its liability to all of its employés for all damages is the same as is the common carrier whose line extends across the continent, when in point of fact this intrastate road may handle only one car or one train of interstate freight in a month, while, under the act, it is liable for all damages to all employés all the time, even though at the time of the injury it is doing strictly an intrastate business. This infirmity in the act is so plainly observable that I deem it unnecessary to further discuss it. Certain it is that the states have not delegated to Congress the power to regulate commerce wholly within a single state; and, if Congress has the power to enact the law in question limited to interstate common carriers, it has, in this act, exceeded that power by including within its terms intrastate commerce.

It was indirectly suggested in the argument that, if the court should take this view of the case, and hold that as the act reads it applies to intra as well as inter state commerce, it was not the intention of Congress that the act should extend to and embrace intrastate common carriers, and that this objection might be remedied by judicial interpretation and construction. The act is plain on its face. It applies to all common carriers engaged in trade or commerce between the states, and imposes upon common carriers whose lines lie wholly within a state, if such lines do any interstate business, the same liability as a common carrier who handles only interstate business.

Three days before this case was heard, the Supreme Court of the United States, in the case of I. C. R. R. Co. v. McKendree, 27 Sup. Ct. 153, 51 L. Ed. ——, decided a very similar question to the one raised here against the contention of the plaintiff. In that case the Supreme Court was, among other things, asked to pass upon the validity of an order (No. 107) of the Hon. Secretary of Agriculture, made pursuant to an act of Congress of February 2, 1903, the effect of which order was to ratify and adopt for the United States a quarantine line formerly adopted by the state of Tennessee, running from east to west through the state of Tennessee; the same not following the state lines between the states of Tennessee and Kentucky, or any other States. This order prohibited the carrying of cattle from south of the line to the north of it, and, in effect, prohibited the carrying of cattle from a county in Tennessee south of the line to a county in Tennessee north of it. The contention of the defendant was that the statute was unconstitutional, and, therefore, the order was a nullity, because it embraced in its terms intrastate, as well as interstate, commerce. It was insisted by the gov-

ernment that it was not the intention of the Secretary to make provision for intrastate commerce, as the recital of the order shows an intention to adopt the state lines. In disposing of this contention the Supreme Court says:

"The terms of order 107 apply to all cattle transported from the south of this line to parts of the United States north thereof. It would, therefore, include cattle transported within the state of Tennessee from the south of the line, as well as those from outside that state. There is no exception in the order, and in terms it includes all cattle transported from the south of the line, whether within or without the state of Tennessee. It is urged by the government that it was not the intention of the Secretary to make provisions for intrastate commerce, as the recital of the order shows an intention to adopt the state line, when the state by its Legislature has passed the necessary laws to enforce the same completely and strictly. But the order in terms applies alike to interstate and intrastate commerce. A party prosecuted for violating this order would be within its terms, if the cattle were brought from the south of the line to a point north of the line within the state of Tennessee. It is true the Secretary recites that legislation has been passed by the state of Tennessee to enforce the quarantine line; but he does not limit the order to interstate commerce coming from south of the line, and, as we have said, the order in terms covers it. We do not say that the state line might not be adopted in a proper case, in the exercise of federal authority, if limited in its effect to interstate commerce coming from below the line; but that is not the present order, and we must deal with it as we find it. Nor have we the power to so limit the Secretary's order as to make it apply only to interstate commerce, which, it is urged, is all that is here involved. For aught that appears upon the face of the order, the Secretary intended it to apply to all commerce, and whether he would have made such an order, if strictly limited to interstate commerce, we have no means of knowing. The order is in terms single and indivisible." Citing U. S. v. Reese, 92 U. S. 214–221, 23 L. Ed. 563; Trade-Mark Cases, 100 U. S. 82, 89, 25 L. Ed. 550; U. S. v. Ju Toy, 198 U. S. 253, 262, 263, 25 Sup. Ct. 644, 49 L. Ed. 1040.

These principles apply to the act under consideration, and by it Congress undertook to make a sweeping and far-reaching change in the law of torts as heretofore administered by the United States courts, touching the liability of common carriers to their employés. The act is single in character, and includes commerce, if it be commerce, wholly within the state, thereby exceeding the authority delegated to Congress by the Constitution of the United States.

My conclusion is that Congress is not authorized, under the commerce clause of the Constitution of the United States, to enact this legislation, for the reason that the relation of interstate common carriers, engaged in interstate trade or commerce, to their employés, and their liability to them in damages for injuries sustained in their employment, as the result of the negligence of any of their officers, agents, or employés, or by reason of any defects or insufficiency due to their negligence in their cars, engines, appliances, machinery, track, roadbed, ways, or works, is not commerce within the meaning of the Constitution. But, if it were, the act does not undertake to regulate this relation or liability, but simply announces by an act of Congress a new law on torts, limited to a special class of those engaged in interstate commerce. The act does not limit the liability which it seeks to impose upon common carriers engaged in interstate trade and commerce to such common carriers, but imposes the same liability upon common carriers engaged in trade and commerce wholly within the state.

Without discussing the two remaining grounds of demurrer, I am of the opinion that the demurrer is good, and must be sustained. An order will be entered in conformity with this opinion.