## PEOPLE v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. December 10, 1909.)

1. STATES (§ 4*)—RELATION TO UNITED STATES—CONGRESSIONAL LEGISLATION —EFFECT.

Where Congress deals with a subject over which it and the states have concurrent jurisdiction, its action is exclusive.

[Ed. Note.—For other cases, see States, Cent. Dig. § 2; Dec. Dig. § 4.*]

2. STATES (§ 4*)—RELATION TO UNITED STATES—LEGISLATION BY CONGRESS— EFFECT.

Where the jurisdiction of Congress is exclusive, nonaction by it shows· an intention on its part that the subject shall be free from restraint, and where jurisdiction is concurrent, nonaction shows an intention to leave the matter to be dealt with by the states; but action prescribing the rule to govern a particular case shows an intention to deal with that case to the exclusion of the states.

[Ed. Note.—For other cases, see States, Cent. Dig. § 2; Dec. Dig. § 4.*]

3. COMMERCE (§ 8*)—RELATION TO UNITED STATES—LEGISLATION BY CONGRESS —EFFECT.

Act Cong. March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (U. S. Comp. St. Supp. 1909, p. 1170), regulating the hours of labor of train dispatchers, etc., is a law from its passage, though its operation is suspended for a year, and from the date of its passage it is effective as a declaration of the purpose of Congress to deal with the matter, and a state law, adopted after such passage, on the same subject, is not in force.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 8.*]

4. COMMERCE (§ 58*)—INTERSTATE COMMERCE—REGULATION—STATUTES—VALID- ITY.

Act Cong. March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (U. S. Comp. St. Supp. 1909, p. 1170), regulating the hours of labor of train dispatchers, etc., is not invalid, because applying to both interstate and intrastate commerce, though an employé within the act may engage in the movement of both interstate and intrastate trains.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.*]

Appeal from Special Term, Rockland County.

Action by the People against the Erie Railroad Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

George N. Orcutt (George F. Brownell, on the brief), for appellant.

Edward R. O'Malley, Atty. Gen. (Edward H. Letchworth, on the brief), for the People.

MILLER, J. This is an action to recover a fine for an alleged violation of section 7a of the labor law, added by chapter 627, p. 1470, Laws 1907, which became a law July 19, 1907, and took effect October 1, 1907. The alleged violation consisted in requiring or permitting, on November 1, 1907, a telegraph operator in charge of a block signal station to be on duty more than 8 hours in 24.

The validity of the act is challenged on several grounds; but, in my view of the case, it is necessary to consider but one. Congress passed

an act covering the same subject, which was approved on March 4, 1907. So far as material to the question before us, that act provided:

"No operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four hour period in all towers, offices, places, and stations continuously operated night and day." Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (U. S. Comp. St. Supp. 1909, p. 1170).

The act provided that it should not take effect until one year after its passage. The defendant is an interstate carrier, and the work of the particular operator in question had to do with interstate trains. I shall assume for the purposes of this discussion—indeed, my own view is—that, apart from the question now to be discussed, the state has the undoubted right, in the exercise of the police power, to provide for the welfare and safety of the public by limiting the hours of labor of railroad employés whose work involves the safety of the public, and that the discrimination between different classes of employés made by the statute is not arbitrary, but rests on a reasonable basis.

But there can be no doubt that, so far as interstate commerce may be affected, the jurisdiction of the state and the federal Legislatures is concurrent; and that is the position taken by the learned Attorney General. However, he asserts that the acts of Congress and the state Legislature may both be effective, even where interstate commerce is involved; but there is no inconsistency between the two, and that in any event the act of Congress was not in force when the state act was passed, or when the offense charged was committed. It is not questioned that, if Congress sees fit to deal with a subject over which it and the state Legislature have concurrent jurisdiction, its action is supreme and exclusive. It is unnecessary to cite authority in support of that proposition. It is based on an express provision of the federal Constitution, and is required by the necessities of the case; for, obviously, it would not do to have one rule prescribed by Congress and another by the state. The latter must yield to the former.

Now, before the act in question was passed, Congress had passed an act covering precisely the same ground, limiting the time that the class of employés in question should be required or permitted to work to 9 hours out of 24. It is contended that, as only a maximum time was prescribed, an act limiting the time to a shorter period is not inconsistent therewith. But that contention loses sight of the fundamental question upon which the exercise of jurisdiction, which the state Legislature possesses concurrently with Congress, depends. Where the jurisdiction of Congress is exclusive, nonaction by it shows an intention on its part that the subject shall be free from restriction. Where jurisdiction is concurrent, nonaction shows an intention to leave the matter to be dealt with by the state Legislatures; but action, which prescribes the rule to govern a particular case, shows an intention of Congress to deal with that case to the exclusion of the state Legislatures, and any different rule prescribed by the latter is inconsistent therewith.

The cases cited by the Attorney General do not support his contention. Sinnot v. Davenport, 22 How. 227, 16 L. Ed. 243, decides exactly to the contrary. In that case, Mr. Justice Nelson did say:

"We agree that in the application of this principle of supremacy of an act of Congress in a case where the state law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together."

But two acts, covering the same subject and prescribing different rules, are "repugnant," within the meaning of that word as used in the above quotation, as is shown by a uniform line of decisions of the United States Supreme Court. See Sherlock v. Alling, 93 U. S. 99, 23 L. Ed. 819; Covington, etc., Bridge Co. v. Kentucky, 154 U. S. 204, 14 Sup. Ct. 1087, 38 L. Ed. 962, and the many cases cited by Mr. Justice Brown.

The case of Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108, relied upon by the Attorney General, was decided upon the ground that the act of Congress did not cover the whole subject dealt with by the state law; but the rule was again iterated that action by Congress excludes action by the states covering the same ground.

It is true that, by its express terms, the act of Congress in question did not go into effect until March 4, 1908. It is stated in the brief of the respondent, by inadvertence, no doubt, that the state law was in force when it was passed. While an act may not go into force until a given date, it may be effective for certain purposes before that date. It becomes a law when passed, the operation of which, however, is suspended for a given period. As a declaration of the purpose and intention of Congress, it was as effective when passed as when it went into effect a year later. By it Congress declared its purpose to enter the field which had theretofore been left to the states, and its view that a maximum of 9 hours of labor in 24 was the proper rule for the class of employés in question; and it suspended the operation of that rule for a year, obviously to allow the interstate carriers affected to readjust their force to conform to the law. Action by Congress on March 4, 1907, cannot be regarded as nonaction until March 4, 1908, because Congress for obvious reasons saw fit to postpone the operation of the rule, which it declared to be the proper rule, for a year. Our attention is called to two decisions in other states upon the precise point, which seem to us to be sound. State v. Missouri Pac. Ry. Co., 212 Mo. 658, 111 S. W. 500; State v. Chicago, M. & St. P. Ry. Co., 136 Wis. 407, 117 N. W. 686, 19 L. R. A. (N. S.) 326.

It is next urged that the federal act in question is itself unconstitutional, for the reason that it applies to both interstate and intrastate commerce. See Employer's Liability Cases, 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297. But that requires a strained and narrow construction of the act in question, which might be justified to sustain, but never to defeat, a law. Doubtless the employé in question had to do with the movements of both interstate and intrastate trains. None the less, the federal act is exclusive; for, jurisdiction once conceded, the superior power must be supreme.

Judgment should be reversed, and a new trial granted; costs to abide the event. All concur.