## SOUTHERN RAILWAY COMPANY *v.* RAILROAD COMMISSION OF INDIANA.

[No. 22,140. Filed January 3, 1913.]

1. RAILROADS.—*Violation of Safety Appliance Act.—Complaint.—Sufficiency.—Interstate Commerce.—Judicial Notice.*—In an action against a railroad company for using a car not equipped with grabirons as required by §5280 Burns 1908, Acts 1907 p. 186, §3, the court will not take judicial notice that defendant was at the time engaged in interstate commerce, so that a complaint alleging that defendant was a common carrier engaged in moving traffic between points within the state, and owned, used and operated between such points, locomotives and cars, that on a specified day it hauled over its tracks locomotives and cars, among which was a certain car hauled in a designated train, which car was loaded with coal and billed from and to points in the state, and that it unlawfully permitted such car to be hauled or used on its line without being provided with grabirons, was not demurrable either for want of facts or for want of jurisdiction of the subject-matter. p. 26.

2. RAILROADS.—*Regulation.—Safety Appliance Act.—Scope.*—The act of 1907 (Acts 1907 p. 186, §5278 *et seq.* Burns 1908) requiring railroad companies to provide certain safety appliances on locomotives and cars is, by its terms, restricted in its operation wholly to the movement of state traffic. p. 30.

3. COMMERCE.—*Interstate Commerce.—Regulation.*—The power of regulating interstate commerce is in congress, and is the subject of exclusive federal control. p. 31.

4. COMMERCE.—*Interstate Commerce.—Regulation.*—When congress acts relative to the regulation of interstate commerce, and its action covers the subject-matter, its action is exclusive as to interference. p. 32.

5. COMMERCE. — *Interstate Commerce. — Regulation. — Power of States.*—Until, and unless congress acts relative to regulating interstate commerce, and its action covers the subject-matter, the states may act. p. 32.

6. COMMERCE.—*Interstate Commerce.—Regulation.—State Legislation.*—State legislation that is not repugnant to, and does not interfere with, place burdens upon, or undertake to regulate, interstate commerce, or that is merely a police regulation, is valid, although in aid of interstate commerce. p. 33.

7. COMMERCE.—*Interstate Commerce.—Regulation.—State Legislation.*—A state law is not invalid as an interference with interstate commerce merely because of its similarity to the federal act.

on the same subject, but to render it invalid, it must operate to interfere therewith directly or substantially, and not merely incidentally, casually, or remotely. p. 34.

8. CRIMINAL LAW.—*Offense Defined by Act of Congress and by State Legislation.*—*Punishment.*—Where both the acts of congress and of the State make a defined act an offense, the commission of the act may be an offense against each and punishable by each. pp. 34, 41.

9. RAILROADS.—*Regulation.*—*Safety Appliance Acts.*—*Purpose.*— The objects and purposes of the state safety appliance act (§5278 *et seq.* Burns 1908, Acts 1907 p. 186) and of the Act of Congress of March 2, 1893 (U. S. Comp. Stat. 1901 p. 3174) as amended March 2, 1903 (U. S. Comp. Stat. Supp. 1909 p. 1143), with respect to grabirons or handholds on cars, are the same, that is, the protection of· those who do and must use them. p. 35.

10. RAILROADS.—*Regulation.*—*Safety Appliance Act.*—*Act of Congress.*—The federal safety appliance act of March 2, 1893 (U. S. Comp. Stat. 1901 p. 3174) as amended March 2, 1903 (U. S. Comp. Stat. Supp. 1909 p. 1143·) requiring the equipment of railroad loco-motives cars, etc., used on a railroad engaged in interstate commerce, with grabirons, not only applies to cars when in use in interstate commerce, but also to cars commonly used on railways so engaged, although at the particular time loaded at a point in a state, and in transit for delivery at another point in the same state. p. 35.

11. COMMERCE.—*Interstate Commerce.*—*Regulation.*—The power to regulate interstate commerce extends to all the instrumentalities of interstate commerce. p. 36.

12. COMMERCE.—*Interstate Commerce.*—*Regulation.*—*State Legislation.*—The doctrine that, where congress has enacted a law relating to interstate commerce, which, by its terms, is not to go into effect until a future time, a state cannot in the interim enact a similar law relating to the same subject-matter within the state, must be qualified by the rule that the prohibited state legislation must be such an interference with interstate commerce as to amount to a regulation or burden upon it, or to affect it adversely. p. 37.

13. COMMERCE.—*Interstate Commerce.*—*Regulation.*—*State Legislation.*—Where a state statute on the same subject-matter prescribes different rules than those contained in the act of congress, concerning interstate commerce, or where the enforcement of both may expose the carrier to conflicting duties, the state statute must yield. p. 38.

14. COMMERCE.—*Interstate Commerce.*—*Railroads.*—*Safety Appliance Acts.*—The state of citizenship of the employes of a railroad affected by state legislation requiring safety appliances on trains and cars used in the moving of state traffic, is not the test of the

validity or invalidity of such legislation, since a state has the power to protect not only its own citizens, but the citizens of other states, when within its borders.  p. 38.

15. RAILROADS.—*Regulation.—Safety Appliance Acts.—Scope.*—Section 5280 Burns 1908, Acts 1907 p. 186, §3, requiring railroad locomotives, cars, etc., to be equipped with grabirons or handholds in the sides or ends thereof, and §5287 Burns 1908, Acts 1907 p. 186, §10, providing a penalty for violation, can not be upheld as being in aid of the Act of Congress of March 2, 1893 (U. S. Comp. Stat. 1901 p. 3174) as amended March 2, 1903 (U. S. Comp. Stat. Supp. 1909 p. 1143), and cannot affect commerce unreasonably, but only indirectly and remotely, since the act of congress is broader in that it requires secure grabirons and handholds on the ends and sides of each car, and there could be no violation of the state act which would not be a violation of the federal act.  p. 39.

16. COMMERCE.—*Interstate Commerce.—Regulations.—State Legislation.*—If punishment imposed by state legislation is by way of reprisal, or for the purpose of laying a burden on interstate commerce or has that effect, such legislation cannot be upheld, but, if it is a reasonable police regulation tending to induce caution in the interests of safety of employes it may be upheld.  p. 40.

17. RAILROADS.—*Regulation.—Safety Appliance Acts.—Validity.—Interstate Commerce.*—Section 5280 Burns 1908, Acts 1907 p. 186, §3, requiring railroad locomotives, cars, etc., to be equipped with grabirons or handholds in the sides or ends thereof, and §5287 Burns 1908, Acts 1907 p. 186, §10, providing a penalty for violation, are not invalid as an attempt to regulate interstate commerce, since the act requires no new duty, imposes no limit on the free use of cars, contains no new or different restrictions as to persons or things carried, or as to the manner or times of carriage, or as to the car itself, than those required by the federal statute and the hazards against which it is directed are not the hazards of such commerce, but only impose an additional penalty for the same omission.  p. 43.

From Superior Court of Vanderburgh County; *Alexander Gilchrist,* Judge.

Action by the Railroad Commission of Indiana against the Southern Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1392 Burns 1908, Acts 1907 p. 237.) *Affirmed.*

*Alex P. Humphrey, Edward P. Humphrey, John D. Welman, Philip W. Frey* and *George R. DeBruler,* for appellant.

*John W. Spencer, John R. Brill* and *Frank H. Hatfield,* for appellee.

MYERS, J.—This was an action brought by appellee against appellant to recover the statutory penalty provided by §3 of the act of 1907 (Acts 1907 p. 186, §5280 Burns 1908). That section reads as follows: "That it shall be unlawful for any such common carrier to haul, or permit to be hauled or used on its line, any locomotive, car, tender, or similar vehicle used in moving of state traffic not provided with secure grabirons or handholds in the sides or ends thereof." The penalizing section is §10 of said act (§5287 Burns 1908), and reads as follows: "That every such common carrier, or the receiver thereof, using, or permitting to be used or hauled on its line, any locomotive, tender, car, or similar vehicle or train, in violation of any of the provisions of this act, shall be liable to a penalty of one hundred dollars for each violation, to be recovered in a suit or suits to be brought by and in the name of the railroad commission of Indiana for the use of the State of Indiana in any circuit or superior court of this state having jurisdiction over such offending carrier. * * * ."

The first error assigned and presented is as to overruling the demurrer to the complaint, which was on the grounds of want of jurisdiction in the court over the subject-matter, and insufficiency of facts to constitute a cause of action. The material allegations of the complaint are that defendant is, and was at the times therein referred to, a common carrier engaged in moving traffic by railroad between points within the State of Indiana, and as such common carrier on February 24, 1910, and for a long time prior and subsequent to that date, owned, used and operated between said points locomotives and cars, and on that date on and over the tracks owned or in the operation or control of defendant had hauled its said locomotives and cars, and among said cars owned or operated by defendant was a car, No. 61,264, of the gondola description, being

hauled or moved in train No. 77 by locomotive No. 641 of defendant, which car was loaded with coal and billed from Boonville, Indiana, to Milltown, Indiana; that while at Huntingburg, Indiana, a station on its line between said stations of Boonville and Milltown, defendant unlawfully permitted said car to be hauled or used on its said line, said car not then being provided with secure grabirons or handholds on the sides or ends of said car; that the handhold on said car was broken, bent and twisted against the body of the car, thereby rendering the same of no use, and the same could not be used, and was not a grabiron or handhold, and that said car at the time was being used in moving traffic and freight between points in the State of Indiana.

The claimed insufficiency of the complaint for want of facts, and the want of jurisdiction of the subject-matter is based on the assumption that courts take judicial notice that appellant was at the time engaged in interstate commerce. No authority for that proposition is cited, and we are unable to find authority for it, and we think it is an erroneous assumption.

The real controversy in the case arises over the action of the court in sustaining a demurrer to the answer. The answer is predicated on the alleged facts that on February 24, 1910, appellant was and now is a corporation organized and existing under and by virtue of the laws of the State of Virginia, and is a railroad company engaged in the operation of a railroad and the carrying of passengers and freight for hire; that it was and is engaged in interstate commerce between states of the United States, has railroad tracks and is operating a railroad as a common carrier in ten states and in the District of Columbia, and is engaged in interstate commerce in the State of Indiana, and was at said time; that all its locomotives and cars, including the car mentioned in plaintiff's complaint, were frequently and commonly used in interstate traffic; that on February 24,

1910, said car mentioned in plaintiff's complaint was loaded with coal, and was consigned to and from points within the State of Indiana; that said car was in train No. 77, and that train No. 77 was at said time engaged in hauling interstate traffic; that said train No. 77 originated in the State of Illinois, and passed through and into the State of Indiana, and various other states; that said car was a part of said train No. 77, and that said train No. 77 contained twenty cars, and all the other cars of said train and the train crew were at said time being used by the defendant in interstate commence between the states, and that said other cars were consigned from one of the states to, into and through another state. That at the time certain federal statutes, commonly called the "safety appliance acts", which are set out, were in full force, regulating and controlling the equipment of cars and engines used by railroads and common carriers engaged in interstate commerce, including automatic couplers and grabirons, by and in which penalties are provided for failure to comply with the provisions of those acts, and the courts and jurisdictions in which such penalties may be recovered; that by reason of the premises all the cars and engines of the defendant, including the car in question, were at the time complained of, subject to the exclusive power of the congress of the United States, and exclusively within the regulation and control provided by said acts of congress.

The federal safety appliance act of March 2, 1893, by its fourth section, provided: "That from and after the first day of July Eighteen hundred and ninety five  *  *  * it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons and handholds in the ends and sides of each car, for greater security to men in coupling and uncoupling cars." U. S. Comp. Stat. 1901 p. 3174. The act was amended March 2, 1903 by §1 as follows: "Be it enacted

\* \* \* and the provisions and requirements hereof and of said Acts relating to train brakes, automatic couplers, grabirons, and the height of drawbars shall be held to apply to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and in the Territories and the District of Columbia, and to all other locomotives, tenders, cars and similar vehicles used in connection therewith, excepting \* \* \* ." U. S. Comp. Stat. Supp. 1909 p. 1143.

The sixth section of the act of 1893, as amended in 1896, provides a penalty of $100 for each violation of the act, and for action on part of the United States district attorney in the district court of the United States having jurisdiction. 29 U. S. Stat. at Large 85, Ch. 87.

It is the contention of appellant, (1) that the sole jurisdiction for punishment for the violation alleged in the complaint is in the United States District Court, and (2) that the interstate commerce act having covered the same field under the power "to regulate commerce" the Indiana statute is void as to a car used on a railroad engaged in interstate commerce, whether the car be loaded and delivered within a state, or whether moved loaded or empty within a state. The answer set out sufficiently discloses appellant's contention and theory.

The solution of the second proposition necessarily determines the first, for the reason that if the federal act is alone controlling, the action to impose a penalty must be in the United States courts, while if the federal act is not controlling as to the subject-matter itself, it is not claimed that there is want of jurisdiction in the state courts.

The controversy is made to wage around the question whether the act of congress refers to and includes any car in use at any time on any railroad engaged in interstate commerce generally, or in any interstate train, irrespective of whether it is at any particular time carrying an intra-

state shipment, or whether at the particular time loaded to be delivered wholly within a state through which such railroad or train runs.

It is the urgency of appellee that the State act is not an effort to regulate or interfere with interstate commerce, and is in aid of the safety appliance acts of congress, and not repugnant thereto, and that where they do not conflict the carrier is answerable to both statutes.

An examination of the state statute discloses that it seeks to restrict its operation wholly to the movement of purely state traffic; in fact the tenth section expressly excepts "locomotives, tenders, cars, similar vehicles or trains, while any of which are in actual use in interstate commerce," and the question is, notwithstanding this fact, Is its effect a regulation or interference with or burden upon interstate commerce, or in conflict, in actual operation, with the federal act, as applied to the character of the shipment disclosed by the answer?

The car in question was at the time used in hauling an wholly intra-state shipment; it was in a train all the other cars of which were used in interstate shipments, or passing from Illinois into or through Indiana, by a train originating in the former state, manned by a crew coming from Illinois. The answer seems to have been drawn under the theory of the holdings in several federal cases, here relied on. *Voelker* v. *Chicago, etc., R. Co.* (1902), 116 Fed. 867; *The Daniel Ball* (1870), 10 Wall. 557, 19 L. Ed. 999; *Wabash R. Co.* v. *United States* (1909), 168 Fed. 1, 93 C. C. A. 393; *Elgin, etc., R. Co.* v. *United States* (1909), 168 Fed. 1, 93 C. C. A. 393; *United States* v. *Illinois Terminal R. Co.* (1909), 168 Fed. 546; *Southern R. Co.* v. *United States* (1911), 164 Fed. 347, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; *Second Employers' Liability Cases* (1912), 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327; *Howard* v. *Illinois Cent. R. Co.* (1908), 207 U. S. 463, 28 Sup. Ct. 141, 52 L. Ed. 297; *Johnson* v.

*Southern Pac. Co.* (1904), 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; *United States* v. *Wheeling, etc., R. Co.* (1908), 167 Fed. 198; *Gloucester Ferry Co.* v. *Pennsylvania* (1885), 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; *Welton* v. *Missouri* (1875), 91 U S. 275, 23 L. Ed. 347; *Reid* v. *Colorado* (1902), 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108; *Easton* v. *Iowa* (1903), 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452; *United States* v. *International, etc., R. Co.* (1909), 174 Fed. 638, 98 C. C. A. 392; *Mondou* v. *New York, etc., R. Co.* (1912), 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327; *Northern Pac. R. Co.* v. *Washington* (1912), 222 U. S. 370, 32 Sup. Ct. 160, 56 L. Ed. 237.

There are some general propositions that may be regarded as settled, which will aid in the solution of the questions involved. (1) The power of regulating commerce "among the states" is in congress, and the subject of exclusive federal control. *State, ex rel.,* v. *Adams Express Co.* (1908), 171 Ind. 138, 85 N. E. 337, 85 N. E. 966, 19 L. R. A. (N. S.) 93; *United States Express Co.* v. *State* (1905), 164 Ind. 196, 73 N. E. 101; *Mondou* v. *New York, etc., R. Co., supra; Northern Pac. R. Co.* v. *Washington, supra; Southern R. Co.* v. *Reid* (1912), 222 U. S. 424, 448, 32 Sup. Ct. 140, 56 L. Ed. 257; *Southern R. Co.* v. *United States, supra; Atlantic Coast Line R. Co.* v. *Riverside Mills* (1911), 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7; *Interstate Commerce Com.* v. *Illinois Cent. R. Co.* (1910), 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280; *Howard* v. *Illinois Cent. R. Co., supra; Schlemmer* v. *Buffalo, etc., R. Co.* (1907), 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681; *Johnson* v. *Southern Pac. Co., supra; Northern Securities Co.* v. *United States* (1904), 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679; *The Roanoke* (1903), 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770; *Easton* v. *Iowa, supra; Hanley* v. *Kansas City, etc., R. Co.* (1903), 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333; *Reid* v. *Colorado, supra; Addyston Pipe, etc., Co.* v. *United States* (1899), 175 U. S. 211, 20

Sup. Ct. 96, 44 L. Ed. 136; *New York, etc., R. Co.* v. *New York* (1897), 165 U. S. 628, 17 Sup. Ct. 418, 41 L. Ed. 853; *Cross* v. *North Carolina* (1889), 132 U. S. 131, 10 Sup. Ct. 47, 33 L. Ed. 287; *Nashville, etc., R. Co.* v. *Alabama* (1888), 128 U. S. 96, 9 Sup. Ct. 28, 32 L. Ed. 352; *Smith* v. *Alabama* (1888), 124 U. S. 465, 8 Sup. Ct. 564, 31 L. Ed. 508; *Sherlock* v. *Alling* (1876), 93 U. S. 99, 23 L. Ed. 819; *Hall* v. *De Cuir* (1877), 95 U. S. 485, 24 L. Ed. 547; *Gloucester Ferry Co.* v. *Pennsylvania, supra; Gibbons* v. *Ogden* (1824), 9 Wheat. 1, 6 L. Ed. 23; *Sturges* v. *Crowninshield* (1819), 4 Wheat. *122, 4 L. Ed. 529; *Sinnot* v. *Davenport* (1859), 22 How. 227, 16 L. Ed. 243; *Cooley* v. *Board, etc.* (1851), 12 How. *299, 13 L. Ed. 996; *Prigg* v. *Commonwealth* (1842), 16 Pet. *539, 10 L. Ed. 1060; *Welton* v. *Missouri, supra; United States, ex rel.,* v. *Union Stock Yards, etc., Co.* (1912), 192 Fed. 330; *United States* v. *International, etc., R. Co., supra; United States* v. *Wheeling, etc., R. Co., supra; Chicago, etc., R. Co.* v. *United States* (1908), 165 Fed. 423, 91 C. C. A. 373, 20 L. R. A. 473; *United States* v. *Colorado, etc., R. Co.* (1907), 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, 13 Ann. Cas. 893; *United States* v. *Illinois Terminal R. Co., supra; Snead* v. *Central, etc., R. Co.* (1907), 151 Fed. 608, 614.    (2) When congress does act, and its action covers the subject-matter, its action is exclusive as to interference. *Pittsburgh, etc., R. Co.* v. *State* (1909), 172 Ind. 147, 87 N. E. 1034; *State, ex rel.,* v. *Adams Express Co., supra; Southern R. Co.* v. *United States, supra; Northern Pac. R. Co.* v. *Washington, supra; Howard* v. *Illinois Cent. R. Co., supra; Johnson* v. *Southern Pac. Co., supra; United States ex rel.,* v. *Union Stock Yards, etc., Co., supra; United States* v. *International, etc., R. Co., supra; Wabash R. Co.* v. *United States, supra; United States* v. *Illinois Terminal R. Co., supra; United States* v. *Wheeling, etc., R. Co., supra.*    (3) Until and unless congress does act, and its action covers the subject-matter, the states may act. *Pittsburgh, etc., R. Co.* v.

*State, supra; Davis* v. *Cleveland, etc., R. Co.* (1909), 217
U. S. 157, 30 Sup. Ct. 463, 54 L. Ed. 708, 27 L. R. A. (N. S.)
823, 18 Ann. Cas. 907; *Missouri Pac. R. Co.* v. *Kansas, ex
rel.* (1910), 216 U. S. 262, 54 L. Ed. 472, 30 Sup. Ct. 330;
*Reid* v. *Colorado, supra; Missouri, etc., R. Co.* v. *Haber*
(1898), 169 U. S. 613, 18 Sup. Ct. 488, 42 L. Ed. 878;
*People* v. *Erie R. Co.* (1910), 198 N. Y. 369, 91 N. E.
849, 29 L. R. A. (N. S.) 240, 139 Am. St. 828, 19
Ann. Cas. 811; *People, ex rel.,* v. *Chicago Tel. Co.*
(1906), 220 Ill. 581, 77 N. E. 245; *Luken* v. *Lake Shore,
etc., R. Co.* (1911), 248 Ill. 377, 94 N. E. 175, 140 Am. St.
220, 21 Ann. Cas. 82. (4) So long as the action of
6. the states is not repugnant to, does not interfere with,
place burdens upon, or undertake to regulate inter-
state commerce, or is mere police regulation, their action,
though in aid, of interstate commerce, is not invalid,
unless it is a direct interference. *Pittsburgh, etc., R.
Co.* v. *State, supra; Pittsburgh, etc., R. Co.* v. *Hartford
City* (1908), 170 Ind. 674, 82 N. E. 787, 85 N. E. 362, 20
L. R. A. (N. S.) 461; *United States Express Co.* v. *State,
supra; State, ex rel.,* v. *Adams Express Co., supra; State,
ex rel.,* v. *Indiana, etc., Co.* (1889), 120 Ind. 575, 22 N. E.
778, 6 L. R. A. 579; *Savage* v. *Jones* (1912), 225 U. S. 501,
32 Sup. Ct. 715, 56 L. Ed. 1182; *Standard Stock Food Co.*
v. *Wright* (1912), 225 U. S. 540, 32 Sup. Ct. 784, 56 L. Ed.
1197; *United States Express Co.* v. *Minnesota* (1912), 223
U. S. 335, 32 Sup. Ct. 211, 56 L. Ed. 459; *Meyer* v. *Wells,
Fargo & Co.* (1912), 223 U. S. 298, 32 Sup. Ct. 218, 56 L.
Ed. 445; *Atchison, etc., R. Co.* v. *O'Connor* (1912), 223 U.
S. 280, 32 Sup. Ct. 216, 56 L. Ed. 436; *Davis* v. *Cleveland,
etc., R. Co., supra; Missouri Pac. R. Co.* v. *Kansas, ex rel.,
supra; Chicago, etc., R. Co.* v. *Solan* (1898), 169 U. S. 133,
18 Sup. Ct. 289, 42 L. Ed. 688; *Lake Shore, etc., R. Co.* v.
*Ohio* (1899), 173 U. S. 285, 19 Sup. Ct. 465, 43 L. Ed. 702;
*Missouri, etc., R. Co.* v. *Haber, supra; Gladson* v. *Minnesota*

(1897), 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064; *New York, etc., R. Co.* v. *New York, supra; Hennington* v. *Georgia* (1896), 163 U. S. 299, 16 Sup. Ct. 1086, 41 L. Ed. 166; *Western Union Tel. Co.* v. *James* (1896), 162 U. S. 650, 16 Sup. Ct. 934, 40 L. Ed. 1105; *Gulf, etc., R. Co.* v. *Hefley* (1895), 158 U. S. 98, 15 Sup. Ct. 802; 39 L. Ed. 910; *Minneapolis, etc., R. Co.* v. *Emmons* (1893), 149 U. S. 364, 13 Sup. Ct. 870, 37 L. Ed. 769; *Louisville, etc., R. Co.* v. *Mississippi* (1890), 133 U. S. 587, 13 Sup. Ct. 348, 33 L. Ed. 784; *Smith* v. *Alabama, supra; Mobile County* v. *Kimball* (1880), 102 U. S. 691, 26 L. Ed. 238; *Civil Rights Cases* (1883), 109 U. S. 3, 3 Sup. Ct. 18, 27 L. Ed. 835; 7. *People* v. *Erie R. Co., supra.* (5) It is not enough to render the state law invalid that it is similar to the federal act upon the same subject; it must in operation interfere directly or substantially with interstate commerce, and not be an incidental or casual interference, or remotely affect it hurtfully. *Pittsburgh, etc., R. Co.* v. *State, supra; Missouri, etc., R. Co.* v. *Haber, supra; Chicago, etc., R. Co.* v. *Solan, supra; Davis* v. *Cleveland, etc., R. Co., supra; Louisville, etc., R. Co.* v. *Kentucky* (1902), 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298; *Henderson Bridge Co.* v. *Kentucky* (1897), 166 U. S. 150, 17 Sup. Ct. 532, 41 L. Ed. 953; *Louisville, etc., R. Co.* v. *Kentucky* (1896), 161 U. S. 677, 16 Sup. Ct. 714, 40 L. Ed. 849; *New York, etc., R. Co.* v. *Pennsylvania* (1895), 158 U. S. 431, 15 Sup. Ct. 896, 39 L. Ed. 1043; *Sherlock* v. *Alling* (1876), 93 U. S. 99, 23 L. Ed. 819; *Civil Rights Cases, supra; Patterson* v. *Kentucky* (1878), 97 U. S. 501, 24 L. Ed. 1115; *United States* v. *Reese* (1875), 92 U. S. 214, 23 L. Ed. 563; *Slaughter House Cases* (1872), 83 U. S. 36, 21 L. Ed. 394; *United States* v. *Dewitt* (1869), 76 U. S. 41, 19 L. Ed. 593. (6) Where both 8. the acts of congress and of the state make a defined act an offense, the commission of the act may be an offense against each and punishable by each. *Dashing* v. *State* (1881), 78 Ind. 357; *Snoddy* v. *Howard* (1875), 51 Ind.

411, 19 Am. Rep. 738; *State* v. *Gapen* (1897), 17 Ind. App. 524, 45 N. E. 678, 47 N. E. 25; *Ambrose* v. *State* (1855), 6 Ind. 351; 23 Cyc. 73; *Reid* v. *Colorado, supra; Cross* v. *North Carolina, supra; Ex parte Siebold* (1879), 100 U. S. 371, 29 L. Ed. 717; *Moore* v. *People* (1852), 14 How. *13, 14 L. Ed. 306; *Fox* v. *Ohio* (1847), 5 How. *410, 12 L. Ed. 213.

From these premises several inquiries inject themselves into the case. (1) Does the federal act cover the particular subject-matter of our state act as to grabirons or handholds? (2) Does the state statute have a real or substantial relation to interstate commerce? (3) Is it a regulation of, or an interference with, interstate commerce, or does it only affect it indirectly and remotely? (4) Is there an actual conflict between the two acts, or is the state act in aid of the federal act?

The object and purposes of both acts are the same with respect to grabirons or handholds on cars; that is, the protection of those who do and must use them. That the federal act includes not only cars when in use in interstate commerce, but also cars commonly used on railways so engaged, even though the car is at the particular time loaded at one point in a state and delivered at another point in the same state, or when unloaded, or when transported in, or as part of a train engaged in, or on a railroad doing an interstate business, and the use of defective cars forbidden, is no longer an open question.

*Southern R. Co.* v. *United States, supra; Chicago, etc., R. Co.* v. *United States, supra; United States* v. *International, etc., R. Co., supra; Wabash R. Co.* v. *United States, supra; United States* v. *Wheeling, etc., R. Co., supra; United States* v. *Illinois Terminal R. Co., supra; United States, ex rel.,* v. *Union Stock Yards, etc., Co., supra; Northern Pac. R. Co.* v. *Washington, supra; Pacific Coast R. Co.* v. *United States* (1909), 173 Fed. 448, 98 C. C. A. 31;

*Union Stock Yards Co.* v. *United States* (1909), 169 Fed. 404, 94 C. C. A. 626; *United States* v. *Colorado, etc., R. Co.* (1907), 157 Fed. 321, 85 C. C. A. 27, 15 L. R. A. (N. S.) 167, 13 Ann. Cas. 893; *United States* v. *Western, etc., R. Co.* (1910), 184 Fed. 336; *Erie R. Co.* v. *Russell* (1910), 183 Fed. 722, 106 C. C. A. 160; *United States* v. *St. Louis, etc., R. Co.* (1906), 154 Fed. 516; *United States* v. *Chicago, etc., R. Co.* (1907), 157 Fed. 616; *Johnson* v. *Great Northern R. Co.* (1910), 178 Fed. 643, 102 C. C. A. 89; *Louisville, etc., R. Co.* v. *United States* (1911), 186 Fed. 280, 108 C. C. A. 326; *Southern R. Co.* v. *Snyder* (1911), 187 Fed. 492, 109 C. C. A. 344; *United States* v. *Baltimore, etc., R. Co.* (1910), 184 Fed. 94; *St. Louis, etc., R. Co.* v. *Taylor* (1908), 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061; *Voelker* v. *Chicago, etc., R. Co., supra.*

Whether the particular car was used in a wholly intrastate shipment, or in an interstate shipment, or in connection with cars which were in a train employed in interstate shipments, could have no real relation to any other subject than the safety of employes, and as to that matter it would be wholly immaterial as to the particular service it was employed in at the time. It may be assumed that in the train the dangers were the same as on like cars, which were engaged in wholly interstate transportation, so that the distinction, if any, does not arise from the character of the service of the car, but from the car itself; and its connection in a train carrying interstate commerce, and the matter of grabirons or handholds on the car has no real or substantial relation to interstate commerce, in the sense of being a regulation. We are speaking of the act in force at the time this action was begun. What may be the effect of the Act of Congress of April 14, 1910, in detail providing just what grabirons or handholds shall be placed on cars, and where, need not be considered unless it could be said to apply to this case, which is not claimed. It is true that the regulation of "commerce among the states" is held

to extend to all the instrumentalities of interstate commerce.

The courts of Missouri and Wisconsin have come to directly opposite views from the courts of New York, Montana and Washington on the subject of provisions 12. with respect to hours of labor. *State* v. *Chicago, etc., R. Co.* (1908), 136 Wis. 407, 117 N. W. 686, 19 L. R. A. (N. S.) 326; *State* v. *Missouri Pac. R. Co.* (1908), 212 Mo. 658, 111 S. W. 500; *State* v. *Northern Pac. R. Co.* (1908), 36 Mont. 582, 591, 93 Pac. 945, 15 L. R. A. (N. S.) 134, 13 Ann. Cas. 144; *People* v. *Erie R. Co., supra; State, ex rel.,* v. *Northern Pac. R. Co.* (1909), 53 Wash. 673, 102 Pac. 876, 17 Ann. Cas. 1013.   The latter case was however reversed on writ of error by the Supreme Court of the United States in *Northern Pac. R. Co.* v. *Washington, supra,* approving the doctrine of the cases in Missouri and Wisconsin, and holding that where congress had enacted a law as to hours of labor, by its terms not to go into effect until sometime later, a state could not in the interim enact a law regulating the hours of labor of employes within the state. The case goes to the greatest length yet declared by that court.   But this doctrine must be supplemented by that other rule, that there must be such interference with such commerce as to amount to a regulation, or burden upon it, or affect it adversely, and not because it may affect it indirectly or remotely, nor where there is no relationship with interstate commerce as such. *Pittsburgh, etc., R. Co.* v. *State, supra,* and cases collected; *State* v. *Indiana, etc., Mining Co.* (1889), 120 Ind. 575, 22 N. E. 778, 6 L. R. A. 579; *Atlantic Coast Line R. Co.* v. *Mazursky* (1910), 216 U. S. 122, 30 Sup. Ct. 378, 54 L. Ed. 411; *Louisville, etc., R. Co.* v. *Kentucky* (1902), 183 U. S. 503, 22 Sup. Ct. 95, 46 L. Ed. 298; *Missouri, etc., R. Co.* v. *Haber, supra; Gladson* v. *Minnesota* (1897), 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064; *Henderson Bridge Co.* v. *Kentucky, supra; Western Union Tel. Co.* v. *James, supra; Louisville, etc., R. Co.* v.

*Kentucky* (1891), 161 U. S. 677, 16 Sup. Ct. 714, 40 L. Ed. 849; *New York, etc., R. Co.* v. *Pennsylvania, supra; Minnesota* v. *Barber* (1890), 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; *Nashville, etc., R. Co.* v. *Alabama, supra; Mugler* v. *Kansas* (1887), 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Sherlock* v. *Alling, supra.*

There is a distinction sought to be made in fact and in law with respect to §3 of the act in controversy. The act seeks to deal only with cars or vehicles "used in moving of state traffic." That there may be cars wholly restricted to moving state traffic may be true, but it must have also been in the minds of the legislators that such cars might be used on railroads engaged in interstate commerce, and in connection with cars so engaged, and also in view of the holdings of the federal courts, that such cars would come within the purview of the acts of congress on the same subject, but it was doubtless also in their minds that the state had not surrendered its police powers, under the act of federal union, and also that even where congress had legislated on the subject, so long as the state act did not interfere with or attempt to regulate the conduct of interstate commerce, or lay a burden on it, or is inconsistent with it, the fact that the act might indirectly affect it, was not sufficient to render it invalid, and it is difficult to perceive how it does any of those things, or can have any such result, in view of the holdings of the Supreme Court of the United States on those questions, and as to the reserved police powers of the states, as shown by the cases herein cited. It must be, and is conceded, that in case of conflict the state statute must yield, that is, if the two statutes prescribe different rules, or the enforcement of both may expose the carriers to conflicts in their duties. In practical application, and for the purposes for which the acts are intended—the safety of employes—it is immaterial whether the train operatives are citizens of the state or not; the fact that they may be, is sufficient to indicate that it is

not the state of citizenship of the employes in a train which is the test of validity or invalidity. The state has the right and the power to protect not only its own citizens, but citizens of another state when within its borders. *New York, etc., R. Co.* v. *New York, supra; Morgan Steamship Co.* v. *Louisiana Board, etc.* (1886), 118 U. S. 455, 6 Sup. Ct. 1114, 30 L. Ed. 237; *Compagnie, Francaise, etc.,* v. *Louisiana State Board, etc.* (1902), 186 U. S. 380, 22 Sup. Ct. 811, 46 L. Ed. 1209; *Barbier* v. *Connally* (1885), 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923.

15. The federal act requires "secure grabirons and handholds *in the ends and sides* of each car;" the state act requires "secure grabirons or handholds in the sides *or* ends thereof." Under the federal act it has been held that these grabirons or handholds must be both in the sides and ends of each car. *United States* v. *Baltimore, etc., R. Co., supra; United States* v. *Norfolk, etc., R. Co.* (1910), 184 Fed. 99. Under the state act, grabirons in the sides *or* ends of a car are sufficient, and it is manifest that the federal act is broader in its requirements. This being true, there could never be a violation of the state act which would not be a violation of the federal act. The former, therefore, could hardly be said to be in aid of the latter, save as a stimulus to caution and effort at conformity *(Hancock* v. *Yaden* [1890] 121 Md. 366, 373, 23 N. E. 253, 6 L. R. A. 576, 16 Am. St. 396), for the federal act covers the requirement of the state act, and goes further, unless it can be put on the ground of the power of the state as a police power to punish additionally for the same offense.

To our minds the cases of *Luken* v. *Lake Shore, etc., R. Co., supra; Detroit, etc., R. Co.* v. *State* (1910), 82 Ohio St. 60, 91 N. E. 869, 137 Am. St. 758; and *New York, etc., R. Co.* v. *New York, supra,* lend little, if any, aid to the solution of the question The force of the first two cases just cited is much impaired, if not overthrown, by the later decisions of the Supreme Court of the United States, to the point that

the cars there in question, as well as the one here in question, were within the control of the act of congress, though the latter decision is grounded on the proposition that even though the two acts were identical, and sought the same purpose, the state statute is not void, "because a failure to equip the car with automatic couplers would subject the railroad company to punishment under a state statute, as well as under the act of congress," and that "a proper police regulation" which does not conflict with congressional legislation, is not necessarily unconstitutional, because it may have an indirect effect on interstate commerce.

The case of *New York, etc., R. Co.* v. *New York, supra,* is grounded on the fact that congress had made no regulation as to heating cars.

As the state act is less broad than the act of congress, we conclude that it cannot be upheld on the ground of being in aid of the latter, and for the same reason cannot be said to affect commerce, except only indirectly and remotely, nor unreasonably because no broader, so that the question finally resolves itself into the proposition, whether a carrier may be punished in both jurisdictions.

If punishment by the state can be said to be by way of reprisal, or for the purpose, or as having the effect of laying a burden on interstate commerce, it cannot be upheld.

16. If it can be regarded as a reasonable police regulation, as further tending to induce caution, in the interest of safety of operatives, it may be upheld, within the rules declared by the Supreme Court of the United States, the final arbiter upon the question.

In *Missouri Pac. R. Co.* v. *Larabee Flour Mills Co.* (1909), 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352, the action of the supreme court of Kansas, commanding a railroad company to transfer cars to and from a mill on another railroad, it was said: "The roads are, therefore, engaged in both interstate commerce and that within the State. In the former they are subject to the regulation of Congress; in the latter

to that of the State, and to enforce the proper relation between Congress and the State the full control of each over the commerce subject to its dominion must be preserved. * * * Running through the entire argument of counsel for the Missouri Pacific is the thought that the control of Congress over interstate commerce and the delegation of that control to a commission necessarily withdrew from the State all power in respect to regulations of a local character. This proposition cannot be maintained." See, also, *Pittsburgh, etc., R. Co.* v. *State, supra.*

In *Asbell* v. *Kansas* (1908), 209 U. S. 251, 28 Sup. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101, which was the case of a state statute making it a misdemeanor to transport cattle into the state without inspection, it was said that while the state may not legislate for the direct control of interstate commerce, a proper police regulation which does not conflict with congressional legislation on the subject involved is not necessarily unconstitutional because it may have an indirect effect upon interstate commerce. *Jamieson* v. *Indiana, etc., Oil Co.* (1891), 128 Ind. 581, 28 N. E. 76, 12 L. R. A. 652; *Minneapolis, etc., R. Co.* v. *Emmons, supra; Gulf, etc., R. Co.* v. *Hefley, supra; Louisville, etc., R. Co.* v. *Mississippi, supra; Hennington* v. *Georgia, supra; Missouri, etc., R. Co.* v. *Haber, supra; Gibbons* v. *Ogden, supra; McDonald* v. *State* (1886), 81 Ala. 279, 2 South. 830, 60 Am. Rep. 159; *New York, etc., R. Co.* v. *New York, supra; Lake Shore, etc., R. Co.* v. *Ohio, supra; Peirce* v. *Van Dusen* (1897), 78 Fed. 693, 24 C. C. A. 280, 69 L. R. A. 705; *State* v. *Baltimore, etc., R. Co.* (1884), 24 W. Va. 783, 49 Am. Rep. 290; *Chicago, etc., R. Co.* v. *Fuller* (1873), 17 Wall. 560, 569, 21 L. Ed. 710; *Smith* v. *State* (1898), 100 Tenn. 494, 499, 46 S. W. 566, 41 L. R. A. 432; *Stewart* v. *Harry* (1867), 3 Bush (Ky.) 438.

8. The same act or series of acts may constitute an offense equally against the United States and the state, and subject the guilty party to punishment under the

laws of each government. *Cross* v. *North Carolina, supra; Ex parte Siebold, supra; Reid* v. *Colorado, supra; Moore* v. *People, supra; United States* v. *Marigold* (1850), 9 How. *560, 13 L. Ed. 257; *Fox* v. *Ohio, supra; Dashing* v. *State, supra; Snoddy* v. *Howard, supra; Cooley* v. *Board, etc., supra; State* v. *Moore* (1855), 6 Ind. 436; *State* v. *Penny* (1882), 19 S. C. 218; *In re Loney* (1890),134 U. S. 372,10 Sup. Ct. 384, 33 L. Ed. 949; *United States* v. *Barnhart* (1884), 22 Fed. 285, 290; *United States* v. *Wells* (1872), Fed. Cas. No. 16,665; *State* v. *Kirkpatrick* (1877), 32 Ark. 117, collecting and reviewing cases of acts which are offenses against both federal and state laws; *People* v. *McDonnell* (1889), 80 Cal. 281, 22 Pac. 190, 13 Am. St. 159; *United States* v. *Amy* (1859), Fed. Cas. No. 14,445; *State* v. *Oleson* (1880), 26 Minn. 507, 5 N. W. 959; *State* v. *Whittemore* (1870), 50 N. H. 245, 9 Am. Rep. 196; *People* v. *Welch* (1894), 141 N. Y. 266, 36 N. E. 331, 38 Am. St. 793, 800, 24 L. R. A. 121; *Territory* v. *Coleman* (1855), 1 Or. 191, 75 Am. Dec. 554; *State* v. *Brown* (1867), 2 Or. 221, 224; *State* v. *Norman* (1898), 16 Utah 457, 465, 52 Pac. 989; *Jett* v. *Commonwealth* (1867), 18 Gratt. (Va.) 933, 942; *Smith* v. *United States* (1869), 1 Wash. Ter. 262, 270; *People* v. *White* (1867), 34 Cal. 183, 186; *Martin* v. *State* (1885), 18 Tex. App. 224; *State* v. *Bardwell* (1895), 72 Miss. 535, 18 South. 379; *Campbell* v. *United States* (1847), Fed. Cas. No. 2,373; *United States* v. *Givings* (1844), Fed. Cas. No. 15,212, reviewing cases; and *United States* v. *Wells, supra,* sustaining the power of both federal and state governments to punish acts violating laws of both; *Bohanan* v. *State* (1885), 18 Neb. 57, 24 N. W. 390, 53 Am. Rep. 591; *In re Truman* (1869), 44 Mo. 183; *Smith* v. *State* (1855), 18 How. 71, 15 L. Ed. 269; *Commonwealth* v. *Ellis* (1893), 158 Mass. 555, 33 N. E. 651; *Commonwealth* v. *Lagorio* (1886), 141 Mass. 81, 6 N. E. 546; *Commonwealth* v. *Fenton* (1885), 139 Mass. 195, 29 N. E. 653; *People* v. *Miller* (1885), 38 Hun 82.

It was an acknowledged rule in this State until abrogated

by express statute, to punish for an infraction of the state law and a municipal ordinance covering the same offense.

In *Gibbons* v. *Ogden, supra,* it was said: "So if a State, in passing on subjects acknowledged to be within its control, and with a view to those subjects, shall adopt a measure of the same character with one which Congress may adopt, it does not derive its authority from the particular power which has been granted, but from some other which remains with the State, and may be executed by the same means. All experience shows that the same measure or measures scarcely distinguishable from each other may flow from distinct powers; but this does not prove that the powers themselves are identical. Although the means used in their execution may sometimes approach each other so nearly as to be confounded, there are other situations in which they are sufficiently distinct to establish their individuality." This assertion appears to us to cover the case in hand.

17. Even though a car ordinarily and commonly used in interstate commerce, and being carried on a railroad engaged in interstate commerce, the hazards against which the statute is directed, are hazards not of such commerce, but of the operation of the car in this State, and is properly the subject of its police power, and properly punishable by it, as well as by the federal act, and is not a regulation of that commerce. It requires no new duty, and imposes no limit on the free use of cars, contains no new or different restrictions to persons or things carried or the manner, or times of carriage, or as to the car itself, and the fact that a like penalty is imposed, is not a burden upon commerce for the reason, if for no other, that if the federal law is obeyed there can be no penalty, and if it is not, the carrier should not be heard to say that a police regulation of a state, for the protection of its citizens, or citizens of another state, while in this State, is invalid, simply because it is subject to punishment under the federal act. The only effect so far as interstate commerce is concerned is to punish the guilty transgress-

or, and not to reach the subjects of such commerce, or those interested in its being unhampered, and is not the exercise of extraterritorial authority or power. *Turner* v. *Maryland* (1882), 107 U. S. 38, 2 Sup. Ct. 44, 27 L. Ed. 370; *Ward* v. *Maryland* (1870), 12 Wall. 418, 20 L. Ed. 449.

We conclude that the section is not invalid, and the judgment is affirmed.

Spencer, J., did not participate in the decision of this cause.

NOTE.—Reported in 100 N. E. 337. See, also, under (2) 7 Cyc. 446; (3) 7 Cyc. 420; (4) 7 Cyc. 422; (8) 12 Cyc. 137. The authorities on the question of congressional power over commerce are reviewed in notes to cases decided by the Supreme Court of the United States in 6 L. Ed. 23, 678; 29 L. Ed. 158; 32 L. Ed. 229; 37 L. Ed. 216; 38 L. Ed. 1041. And upon state regulation of interstate commerce, see note in 29 L. Ed. 158. For a discussion of the state regulation of railroads as an interference with interstate commerce, see note in 7 Ann. Cas. 5; 13 Ann. Cas. 147.